UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOAN B. DAVIS,

     Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

Case No. 16-13495

David M. Lawson
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 20)

**I.**    **PROCEDURAL HISTORY**

    A.    <u>Proceedings in this Court</u>

On September 27, 2016, plaintiff Joan Davis, acting *pro se*, filed the instant

suit. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3),

District Judge David M. Lawson referred this matter to the undersigned for the

purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's

claim for period of disability and disability insurance benefits. (Dkt. 4). This

matter is before the Court on cross-motions for summary judgment. (Dkt. 15, 20).

    B.    <u>Administrative Proceedings</u>

Plaintiff initially filed her claims for a period of disability and disability

insurance benefits on January 30, 2014. (*See* Administrative Record, Dkt. 12,

hereinafter referred to as "Tr." at 10).  The claims were first disapproved by the

Commissioner on March 20, 2014.  (Tr. 86-9).  Plaintiff requested a hearing and on

June 3, 2015, plaintiff appeared with counsel before Administrative Law Judge

("ALJ") Yasmin Elias, who considered the case de novo.  (Tr. 10).  In a decision

dated July 1, 2015, the ALJ found that plaintiff was not disabled from November 1,

2013, the alleged onset date ("AOD"), through the date of the decision.  (Tr. 19).

Plaintiff requested a review of this decision.  (Tr. 5-6).  The ALJ's decision

became the final decision of the Commissioner when the Appeals Council, on

August 8, 2016, denied plaintiff's request for review.  (Tr. 1-4); *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 51 years old at the time of the date of alleged onset of disability

of November 1, 2013.  (Tr. 18).  She has past relevant work as a nurse

assistant/home health aide, hand packer, hi-lo driver, housekeeper, babysitter,

financial aid technician and construction worker.  In considering her claim, the

ALJ applied the five-step disability analysis and found at step one that plaintiff had

not engaged in substantial gainful activity since the AOD.  (Tr. 12).  At step two,

the ALJ found that plaintiff's spinal disorder, osteoarthritis, asthma, and an

affective disorder were "severe" within the meaning of the second sequential step.

(*Id.*).  However, at step three, the ALJ found no evidence that any of plaintiff's

impairments or combination of impairments met or medically equaled one of the

listings in the regulations.  (Tr. 13).  Thereafter, the ALJ determined the following

as to plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in 20
> CFR 404.1567(b) except she is unable to climb ladders,
> ropes, and scaffolds; she is limited to occasional climbing
> of ramps and stairs, balancing, stooping, kneeling,
> crawling, and crouching; must avoid moderate exposure
> to irritants (e.g., fumes, dusts, and odors) and hazards
> (e.g., ,moving machinery and unprotected heights); and is
> limited to one to two step tasks.

(Tr. 14).  At step four, the ALJ found that plaintiff was unable to perform any past

relevant work.  (Tr. 18).  At step five, the ALJ denied plaintiff benefits because she

found that there were jobs that exist in significant numbers in the national economy

that plaintiff could perform.  (*Id.*).

    B.    <u>Plaintiff's Motion for Summary Judgment</u>

    Plaintiff claims a number of errors pertaining to the ALJ's unfavorable

decision and the Appeals Council's denial of her review request.  Plaintiff,

however, provides very little argument in support of her claims.  First, plaintiff

states that the ALJ's decision is not supported by substantial evidence.  She claims

she is unable to work due to her physical and mental conditions, that the ALJ made

procedural errors, and that the decision is not supported by substantial evidence

pertaining to her psychiatric records.  (Dkt. 15, pp. 2-3).  Plaintiff also lists several

reasons why she believes the Appeals Council erred in its denial of her review

request: the Appeals Council did not give sufficient weight to the treating

physician's opinion, it did not consider pain and other depression symptoms, and it

did not ask for complete assessments of her work abilities from treating physicians.

(*Id.* at p. 3).

She also challenges the Social Security Administration's processes.  More

particularly, she states that she was not informed that she had the rights to (1)

submit additional evidence; (2) examine the evidence used in making the

determination; (3) to introduce witnesses and question them, and (4) to present

written or oral arguments to the ALJ.  (*Id.*).  She also claims she was not notified

that an expert witness would be at the hearing, and avers more generally that there

was an "abuse of process".  (*Id.*).

Plaintiff states that she "can prove that she attended Disability

Determination Services and was examined by a medical consultant and examiner

who was not part of the initial decision and barred from deciding plaintiff's

reconsideration of claim the claim [sic] which was denied." (*Id.* at p. 2).  Finally,

she claims that she was not in a condition to answer questions at the hearing before

the ALJ because she was under the influence of prescription drugs.  (*Id.*).

    C.    <u>Commissioner's Motion for Summary Judgment</u>

    The Commissioner argues that there was substantial evidence to support the

ALJ's unfavorable decision.  The Commissioner cites various parts of the

administrative record to support the conclusion that, although plaintiff has

impairments, none caused functional limitations rendering her disabled.  For

example, records from early 2013 show normal range of motion in her back,

normal motor and sensory examinations in her lower extremities, and minimal disc

desiccation.  (Dkt. 20, Commissioner's Brief, p. 7).  And, although plaintiff fell in

April 2015, in March 2015 she had no positive musculoskeletal findings, and her

physical therapy did not include mobilization or gait training.  (*Id.* at p. 8).

Regarding plaintiff's asthma, the Commissioner points out that plaintiff was not

prescribed a Nebulizer until April 2015, she continues to smoke cigarettes, her

lungs generally were clear to auscultation, x-rays of the chest had been normal, and

her blood pressure had been well controlled.  (*Id.* at p. 9) (citing Tr. 48, 224, 227-

228, 230, 232, 236, 501; *see also* Tr. 309, 313, 315, 318).  Regarding her affective

disorder, the Commissioner notes that plaintiff has no history of hospitalizations or

psychological treatment before February of 2014.  Further, while plaintiff did

receive a GAF score of 50 because she was sad and tearful, by February 2015 she reported that she was feeling great, that she was compliant with medication with no adverse side effects, and that her financial situation was not as bad as it was in the past. (*Id.*). Moreover, plaintiff's treating physician, Dr. Syed Hussain, assessed GAF scores ranging variously from 55 to 65 between August 2014 and May 2015.

As to plaintiff's claims against the Appeals Council, the Commissioner argues that the Appeals Council decision is not reviewable by this Court. (*Id.* at p. 13) (citing *Meeks v. Sec'y of Health & Human Servs*., 1993 WL 216530, at *1 (6th Cir. June 18, 1993)). Nevertheless, the Commissioner goes on to analyze plaintiff's claims against the Appeals Council as if they were raised against the ALJ. On plaintiff's claim that her treating physician's opinions were not accorded sufficient weight, the Commissioner states that the ALJ properly assessed the greatest weight to the two agency physicians: Drs. Yousef and Khalid. (*Id.* at p. 11) (citing *Blakley v. Comm'r of Soc. Sec*., 581 F.3d 399, 409 (6th Cir. 2009) ("Certainly, the ALJ's decision to accord greater weight to state agency physicians over Blakley's treating sources was not, by itself, reversible error")). Further, the Commissioner argues that the ALJ's decision to give plaintiff's treating physician Dr. Pieh's opinion little weight was proper because the opinion was not supported by any narrative, and there were inconsistencies between the opinion and the record evidence. (*Id.*). Specifically, in April 2015 after treating plaintiff following

a fall, Dr. Pieh noted plaintiff's use of a cane but recorded that she was ambulatory; then, without any explanation or support, checked off a box indicating that plaintiff was unable work.  However, the Commissioner maintains that there is nothing in the record to support this assessment as applied to an earlier period. (*Id.*).

According to the Commissioner, contrary to plaintiff's claim, the ALJ was not required to seek an RFC assessment from her treating physician; the ALJ did consider her symptoms of depression; and the ALJ made appropriate weight assignments to the medical opinions.  (*Id.* at p. 11, 13).

Furthermore, the Commissioner contends that even if the Court were to find that the ALJ erred in assessing plaintiff a light work RFC, the VE testified that there are also sedentary jobs available in significant numbers in the economy.  (*Id.* at p. 12).  Therefore, the ALJ's decision is supported by substantial evidence.

In response to plaintiff's general claims of abuse of process and failure to notify her of her rights, the Commissioner maintains that plaintiff is simply incorrect.  The hearing notice provided to Plaintiff contained proper notification of her rights.  (*Id.* at p. 14-15).  As to plaintiff's argument that she was incapable of properly answering questions because she was under the influence of her prescription medications, the Commissioner contends that there is no evidence of difficulty answering questions—she was able to provide detailed answers.  Further,

she was represented by counsel who could have requested a continuance if her medication was causing a problem.  (*Id.*).

As to plaintiff's claims about her purported visit with Disability Determination Services, the Commissioner contends that there is no evidence in the record showing a consultative examination, and there was no "reconsideration" phase in the proceedings.  (*Id.* at p. 15).  After the initial denial, the claim proceeded to an ALJ hearing.  (*Id.*).

Finally, the Commissioner construes the additional evidence plaintiff submitted to the Court after she filed her brief as a request for a sentence six remand under § 605(g).  In response, the Commissioner argues that plaintiff has not met the requirements for a sentence six remand.  Sentence six provides that the court may at any time "order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . ."  *See King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 206 (6th Cir. 1990).  However, two of the documents plaintiff recently submitted are already in the record and thus are not *new* evidence.  (Dkt. 20 at p. 16; Tr. 502, 504).  Further, plaintiff failed to show that the remaining evidence is material as it post-dates the ALJ's decision.  (Dkt. 20 at p. 16).  Moreover, it is not clear that she has established good cause for submitting at least some of the evidence prior to the

hearing.  (*Id.*) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).

D.    Plaintiff's Reply

Plaintiff filed an "Answer" which the undersigned construes as a reply.  In reply, plaintiff states that the ALJ denied her disability claim because she attended church, and contends that this determination violated her First Amendment Rights and is erroneous because the church is three blocks from her home and services last only an hour and a half.  (Dkt. 23, Pg ID 615-16).  She also states that she was denied disability benefits because of her obesity.  Furthermore, the obesity determination was erroneous because she is not excessively obese, and her weight gain is caused by the steroids she takes.  (*Id.* at Pg ID 616).  She claims that while taking her medication she cannot stay focused and that the MRI she filed with the Court in May 2017 shows several bulging discs in her back which causes her pain all day.  (*Id.*).

III.   **DISCUSSION**

A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If a

claimant does not receive relief during this administrative review process, the

claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d

535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In determining

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting SSR 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the
Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*).
Title II benefits are available to qualifying wage earners who become disabled
prior to the expiration of their insured status; Title XVI benefits are available to
poverty stricken adults and children who become disabled.  F. Bloch, Federal
Disability Law and Practice § 1.1 (1984).  While the two programs have different
eligibility requirements, "DIB and SSI are available only for those who have a
'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"
means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)
(SSI).

The Commissioner's regulations provide that disability is to be determined
through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

   If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

   C.    <u>Analysis and Conclusions</u>

   Plaintiff's claims can be separated into four distinct groups: Appeals

Council errors, Sentence Six remand, procedural due process, and her claim having

to do with Disability Determination Services. Each will be discussed in turn. For

the reasons stated fully below, the undersigned finds that plaintiff's claims lack

merit and thus **RECOMMENDS** that plaintiff's motion for summary judgment be

**DENIED** and that defendant's motion for summary judgment be **GRANTED**.

1.  Appeals Council

Plaintiff lists three errors she believes the Appeals Council made in denying her review request: that the Appeals Council did not give sufficient weight to her treating doctor's opinion, did not consider pain and other symptoms arising from her chronic depression, and erred in not asking for complete assessments of her abilities from treating doctors.  (Dkt. 15 at p. 3).

As an initial matter, the Appeals Council decision is not reviewable by this Court.  The Sixth Circuit has stated that, "[a]n Appeals Council order denying review is not . . . a reviewable order; such an order serves only to make the decision of the ALJ the final reviewable decision of the Secretary."  *Meeks v. Sec'y of Health & Human Servs.*, 1993 WL 216530, at *1 (6th Cir. June 18, 1993) (citing 20 C.F.R. § 404.955); *see also Swindlehurst v. Astrue*, 2012 WL 1622989, at *1 (E.D. Mich. Mar. 9, 2012) ("the Appeals Council's decision not to reopen a prior decision is not reviewable") (citing *Harper v. Sec'y of Health and Human Servs.*, 978 F.2d 260, 262 (6th Cir. 1992)).  Therefore, the undersigned will not review the Appeals Council's order.

Having said that, the undersigned recognizes that a *pro se* plaintiff's pleadings are to be liberally construed.  *McNier v. Comm'r of Soc. Sec.*, 166 F. Supp. 3d 904, 908 (S.D. Ohio 2016) (citing *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985)).  Therefore, to the extent plaintiff intended to raise these

arguments against the ALJ instead, the arguments lack merit.  The opinion of a treating physician should be given controlling weight if it is:  (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).  The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion.  These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ should consider other specific factors to resolve the question of what weight will be assessed.  Those factors include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.  *Id.*; *see also Wilson,* 378 F.3d at 544.  Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight.  *Gayheart*, 710 F.3d at 376-77.

> This requirement is not simply a formality; it is to safeguard the claimant's procedural rights.  It is intended 'to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ] he is not.  Significantly, the requirement safeguards a reviewing court's time, as it "permits meaningful" and efficient "review of the ALJ's application of the [treating physician] rule."'

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citations omitted).  "This circuit 'has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion.'" *Gayheart,* 710 F.3d at 380 (quoting *Cole,* 661 F. 3d at 939).

Here, the ALJ assigned treating physician Dr. Pieh's opinion limited weight based on "the omission of objective studies to support it and inconsistencies between this declaratory opinion and prior reports."  (Tr. 17).  More specifically, as the ALJ explained, Dr. Pieh "checked off that plaintiff was unable to work" but provided no support for this assertion.  (Tr. 17).  Indeed, Dr. Pieh specifically noted that MRIs and EMGs were not available for his review.  (*Id*).  On the other hand, as noted by the ALJ, numerous other reports in the record provide support for the conclusion that notwithstanding her limitations, plaintiff is not disabled.  For instance, in February of 2013 plaintiff had a negative straight leg raising test, and examination of her lower extremities was normal.  (Tr. 16).  The ALJ referenced several objective findings that showed either minimal deficits or were

followed by later findings which fell into the normal to mild range.  (*Id.*)  After

summarizing the aforementioned records, the ALJ observed the following:

> Overall, aside from the one MRI and a recently reported
> fall, the medical evidence of record contains
> unremarkable findings.  For example, even though the
> claimant fell in April 2015 and was prescribed a wheeled
> walker, as recently as March 2015, she had no positive
> musculoskeletal findings (5F/3; 6F).  The motor and
> sensory examinations were grossly intact (5F/9).  This is
> consistent with the overwhelming majority of medical
> records.  The older records show that the claimant told
> doctors that she had only moderate difficulty with gait
> and bending.  Her physical therapy treatment plan did not
> involve mobilization (8F/12).  Furthermore, the claimant
> admitted that it requires 10 steps to get into her home,
> and there are additional steps inside (8F/14).  The
> claimant also admitted that she had minimal difficulty
> with dressing, squatting, and range of motion.  The
> record also reflects that in addition to caring for her own
> needs, the claimant babysits her grandchild (8F/7).
> Accordingly, nothing in the treatment records suggests
> the claimant is unable to perform light work.

(*Id.*)[1]

Also, Dr. Pieh's opinion that plaintiff was unable to work was relatively new

with no indication that his assessment applied to any period preceding his April

2015 examination.  And, the statement that plaintiff was unable to work is not

supported by the evidence in the record.  Given the omission of objective studies,

inconsistences between Dr. Pieh's opinion and prior reports, and the lack of a long-

---

[1] Record references within quote can be found at Tr. 356-365, 371, 392-405.

term treating relationship, the ALJ assigned Dr. Pieh's opinion limited weight. (Tr. 17).  In doing so, the ALJ provided good reasons both for declining to afford Dr. Pieh's opinion controlling weight, and for according his opinion limited weight.  As to the latter, the decision expressly observed that (1) Dr. Pieh did not have a long-term treating relationship with plaintiff; (2) Dr. Pieh's opinions were formed without the aid of objective diagnostic testing and contained internal inconsistency; and (3) his opinions were not supported by the overall record.

Additionally, as noted by the Commissioner, the ultimate decision of disability is reserved to the Commissioner.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs"); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (Treating physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence"); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("'The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.' *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).").  Dr. Pieh checked a box on his evaluation form indicating that plaintiff was unable to work – at least as of April 2015.  The sole narrative in the explanation section on that form mentions that plaintiff ambulates with a cane. (Tr. 487).  No other limitations or restrictions are discussed.  In this regard, Dr.

Pieh's "opinion" was not so clearly a "medical opinion" as that term is used in the

regulations, or of a nature that the ALJ was required to give it controlling weight or

even subject it to the good reasons analysis.  The ALJ must consider all <u>medical</u>

<u>opinions</u> that he or she receives in evaluating a claimant's case.  20 C.F.R.

§ 416.927(d).  The applicable regulations define medical opinions as "statements

from physicians ... that reflect judgments about the nature and severity of your

impairment(s), including your symptoms, diagnosis and prognosis, what you can

still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R.

§ 416.927(a)(2).  Announcing that plaintiff is unable to work without explanation

as to how that conclusion translates in terms of a functional analysis, essentially

amounts to an opinion on a matter reserved to the Commissioner (i.e., disability)

and does not meaningfully inform the ALJ as to plaintiff's impairments or

resulting limitations and restrictions.  Certainly Dr. Pieh's observation that plaintiff

ambulated with a cane would not appear to provide a limitation precluding all

work.  Thus, Dr. Pieh's statement is not properly characterized as a medical

opinion; and accordingly, the ALJ was not required to give it controlling weight.

*See e.g.*, *Riggs v. Comm'r of Soc. Sec.*, 2016 WL 3437537, at *4 (W.D. Mich. June

23, 2016) (Opinion that plaintiff was disabled and unable to work is not a medical

opinion); *West v. Astrue*, 2011 WL 825791, at *8 (E.D. Tenn. Jan. 19, 2011) ("[I]t

was reasonable for the ALJ to omit discussion of Dr. Coffey's opinion because it

was not a 'medical opinion' as defined by 20 C.F.R. § 416.927(a)(2)."); *Koller v.*

*Astrue*, 2011 WL 5301569, at *5 (E.D. Ky. Nov. 3, 2011) (finding that the ALJ is

not required to defer to statements by physicians concerning matters reserved to

the Commissioner).

On the other hand, the ALJ assigned state agency reviewing Drs. Yousef and

Khalid great weight because their opinions were consistent with the medical

evidence and the record as a whole.  (*Id.*).  "Findings of fact made by State agency

medical and psychological consultants and other program physicians and

psychologists regarding the nature and severity of an individual's impairment(s)

must be treated as expert opinion evidence of nonexamining sources at the

administrative law judge and Appeals Council levels of administrative review."

SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996).  An ALJ may credit a non-

treating physician's opinion over a treating physician's opinion when the ALJ gave

good reasons for discounting the treating physician's opinion and the non-treating

physician's opinion is supported by substantial evidence.  *Hill v. Comm'r of Soc.*

*Sec.*, 560 Fed. Appx. 547, 550 (6th Cir. 2014).  As demonstrated above, the ALJ

gave good reasons for discounting plaintiff's treating physician's opinion, and as

discussed below, the non-treating reviewing physicians' opinions are supported by

substantial evidence.

Dr. Yousef evaluated plaintiff's mental functioning, and found that plaintiff had mild difficulty with social function and moderate difficulty with concentration, persistence and pace. (Tr. 17). As a result, he concluded that she could perform simple, routine, repetitive tasks. (*Id.*) Dr. Yousef's conclusions align with other evidence in the record, namely medical records indicating that plaintiff was capable of performing tasks of daily living like driving, going out alone, shopping in stores and online, reading her bible, using a checking account, watching television and attending church. Additionally, plaintiff did not have any psychiatric hospitalizations and failed to follow up with outpatient treatment. (*Id.* and Tr. 79, 82).

Dr. Khalid opined as to plaintiff's exertional limitations, concluding that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; she could stand and/or walk for 6 hours out of an 8 hour workday; sit for a total of 6 hours out of an 8-hour work day; push and pull without restrictions beyond her lift/carry limitations; and occasionally climb, balance, stoop, kneel, crouch and crawl. (Tr. 81-82). The ALJ adopted in the RFC those opinions of Dr. Khalid that were supported by the medical evidence in the record. (Tr. 17). Dr. Khalid's evaluation is supported by the record. (*See* Tr. 77-78, medical evidence on which Dr. Khalid relied). For instance, in January 2013 plaintiff had normal range of motion in her spine. (Tr. 224). In February 2013 plaintiff had normal curvature of the spine, her

straight leg raise was bilaterally negative, and she had normal bilateral lower extremities.  (Tr. 225).  She was noted as having no joint swelling, no tenderness, reduced range of motion in "l-s spine" in a musculoskeletal examination, and her strength appeared to be within normal limits in January 2014.  (Tr. 309).  In February 2013, an x-ray of plaintiff's left hip revealed the osseous structures to be within normal limits (Tr. 238, 239) and an x-ray of her lumbar spine showed normal osseous structures, and that the disc spaces were well preserved.  (Tr. 240).  Thus, the opinions of Dr. Khalid that were relied upon are supported by substantial evidence in the record, and there is no reason to disrupt the ALJ's weight assignments in this regard.

Plaintiff's other claims of error also lack merit.  For instance, the record reveals that the ALJ did consider the impact that her psychological symptoms would have on her ability to work, contrary to plaintiff's contention.  (Tr. 16).  Specifically, the ALJ noted that overall her mental evaluations were normal and her symptoms were well-managed.  (*Id.*).  As noted by the ALJ and asserted by the Commissioner, the record evidence reveals that plaintiff has no history of hospitalizations or psychological treatment before January or February of 2014.  (*Id.* and Tr. 350).  The ALJ also considered the facts that during her February 2014 psychiatric evaluation she was cooperative, pleasant, friendly and talkative; and she did not have any psychomotor agitation or retardation.  (Tr. 350).  And, while

she was assessed a GAF score of 50 in early 2014, between August 2014 and May

of 2015 she was assessed meaningfully higher scores ranging from 55 to 65.  (*Id.*

and Tr. 420-426, 457, 463).[2]   In March of 2015 she had good mood and normal

eye contact, psychomotor activity, attitude/behavior, speech, affect and thought

process.  She was compliant with medication and reported that her financial

situation was better than it had been.  (*Id.* and Tr. 406-411).

Additionally, contrary to plaintiff's claim, the ALJ did not err in not

requesting a medical assessment of her abilities.  It is the claimant's responsibility

to provide evidence establishing her RFC.  The statute provides that, "[a]n

individual shall not be considered to be under a disability unless he [or she]

furnishes such medical and other evidence of the existence thereof as the Secretary

may require."  42 U.S.C. § 423(d)(5)(A).  In deriving the plaintiff's RFC, the

Commissioner must base the decision on "all of the relevant medical and other

evidence."  20 C.F.R. 416.945.  The statute does not require that the Commissioner

---

[2] In any event, courts in this Circuit have acknowledged the limited utility of GAF scores in assessing a claimant's assertion of disability.  *DeBoard v. Comm'r of Soc. Sec.,* 211 Fed. Appx. 411, 415 (6th Cir. 2006) (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50,746, 50,764–65 (Aug. 21, 2000)) ("the Commissioner has declined to endorse the [GAF] score for use in the Social Security and [Supplemental Security Income] disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings.") (second alteration in original) (internal quotation marks omitted); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 835–36 (6th Cir. 2016) ("GAF scores are 'not raw medical data,' *id.,* and 'the Commissioner has declined to endorse the [GAF] score for use in' Social Security benefits programs") (citing  *Lee v. Comm'r of Soc. Sec.,* 529 Fed. Appx. 706, 716 (6thCir.2013)).

rely on a physician's RFC, or any other particular piece of evidence.  Indeed, the
Sixth Circuit has opined, in at least one unpublished decision that, "[t]o require the
ALJ to base her RFC finding on a physician's opinion, would, in effect confer
upon the treating source the authority to make the determination or decision about
whether an individual is under a disability, and thus would be an abdication of the
Commissioner's statutory responsibility to determine whether an individual is
disabled."  *Rudd v. Comm'r of Soc. Sec.* , 531 Fed. Appx. 719, 728 (6th Cir.
2013).[3]

Furthermore, "[w]hile an ALJ 'has broad latitude in ordering a consultative
examination,' *Diaz v. Secretary of Health and Human Services*, 898 F.2d 774, 778
(10th Cir. 1990), the ALJ is not required to do so 'unless the record establishes that
such an examination is necessary to enable the [ALJ] to make the disability
decision,'" *Landsaw v. Secretary of Health & Human Services*, 803 F.2d 211, 214
(6th Cir. 1986) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir.1997).
*Culp v. Comm'r of Soc. Sec.*, 2012 WL 4490746, at *4 (W.D. Mich. June 15,
2012), report and recommendation adopted sub nom. *Culp v. Sec'y of Health &
Human Servs.*, 2012 WL 4490740 (W.D. Mich. Sept. 28, 2012), aff'd sub nom.

---

[3] The undersigned acknowledges a separate line of cases that suggests a medical opinion
on a claimant's RFC may be appropriate when it appears that the ALJ has engaged in the
prohibited act of "playing doctor" by interpreting raw medical data.  *See e.g. Isaacs v. Astrue,*
2009 WL 3672060 at *10 (S.D. Ohio Nov. 4, 2009); *Deskin v. Comm'r Soc. Sec.* 605 F. Supp 2d
908, 912 (N.D. Ohio 2008); and *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).  Plaintiff has
advanced no such claim here, and the record does not otherwise evoke such an analysis.

*Culp v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 750 (6th Cir. 2013). The Social

Security Administration provides further guidance here: "If your medical sources

cannot or will not give us sufficient medical evidence about your impairment for us

to determine whether you are disabled or blind, we may ask you to have one or

more physical or mental examinations or tests. We will pay for these

examinations." 20 C.F.R. § 404.1517. "We may purchase a consultative

examination to try to resolve an inconsistency in the evidence, or when the

evidence as a whole is insufficient to allow us to make a determination or decision

on your claim." 20 C.F.R. § 404.1519a. During the administrative hearing, the

ALJ expressly asked whether the record was complete, and plaintiff's attorney

confirmed that it was. (Tr. 28). The record contains sufficient medical records to

allow the ALJ to make a determination in this case without ordering a separate

examination or assessment. Further, the ALJ had the benefit of a reviewing

physician, Dr. Khalid's opinion as to plaintiff's limitations based on his review of

the medical records provided at that time. (Tr. 17, 80-81). Ultimately, the ALJ

accepted only those portions of Dr. Khalid's opinion that were consistent with the

overall record, and in fact, imposed greater postural limitations – "unable to climb

ladders, ropes, and scaffolds" – in her RFC than those assessed by Dr. Khalid, as

well as limitations to avoid moderate exposure to irritants and hazards and to be

restricted to one to two step tasks. (Tr. 14). Plaintiff has not pointed to any record

evidence which would undermine a finding of substantial evidence to support the limitations assessed by the ALJ.

        2.     Sentence Six Remand

Plaintiff submitted evidence to the Court after filing her motion for summary judgment.  (Dkts. 19, 21).  As noted above, this Court's review is limited to the evidence in the record.  *Bass*, 499 F.3d at 512-13; *Foster*, 279 F.3d at 357.  The question before the Court is whether plaintiff was disabled on or before the date of the ALJ decision, July 1, 2015.  This Court cannot review and use any new evidence in determining whether the ALJ's decision is supported by substantial evidence in the record.  *See Young v. Berryhill*, 2017 WL 2727889, at *2 (E.D. Ky. Mar. 21, 2017) ("The Court may evaluate only whether the ALJ applied the correct legal standards and made factual findings that are supported by substantial evidence in the record.").  Further, even if the new evidence had been submitted to the Appeals Council, the Court could not rely on it because the Appeals Council declined to review plaintiff's case.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan,* 2 F.3d 692, 695–96 (6th Cir.1993) ("where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or

reverse the ALJ's decision.").  Therefore, the undersigned will not consider the evidence plaintiff submitted to this Court in that manner.

Given that *pro se* filings are to be liberally construed, the Court considers plaintiff's submission of additional medical evidence to be a request for a Sentence Six remand under 42 U.S.C. § 405(g).  *See McNier v. Comm'r of Soc. Sec.*, 166 F. Supp. 3d 904, 910 (citing *Martin v. Comm'r of Soc. Sec.*, 2014 WL 2114690, at *3 (N.D. Ohio May 20, 2014)).  However, plaintiff has failed to demonstrate that she is entitled to a Sentence Six remand.

"Sentence six of § 405(g) addresses situations where a Claimant submits new evidence that was not presented to the ALJ but would alter the ALJ's ultimate decision."  *Courter v. Comm'r of Soc. Sec.*, 479 Fed. Appx. 713, 725 (6th Cir. 2012).  Sentence Six provides that the court may at any time

> order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding, and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both.

42 U.S.C. § 405(g).  Evidence is new if it was not in existence at the time of the hearing.  *See Foster*, 279 F.3d at 357.  "Material evidence is evidence that would likely change the Commissioner's decision."  *Bass*, 499 F.3d at 513 (citation

omitted).  Plaintiff has not made the case that a review of the subject records would likely change the Commissioner's decision.  In a filing supplemental to her motion, she merely states that she provided the medical evidence in the hope that it will help this Court come to a decision.  (Dkt. 19, Pg ID 576).  Certainly evidence presented as "new" which was already in the record is, in fact, not new and will not change the Commissioner's decision; and evidence of medical tests and examinations conducted after the hearing that are largely consistent with prior findings – which the proffered records appear to be - is unlikely to bring about a different result.

As noted, some of the evidence plaintiff submitted is already in the record and therefore is not new because it was available at the time of the hearing. Specifically, the October 29, 2013 MRI report appears at Tr. 502 and the May 20, 2014 progress note appears at Tr. 504.  The remaining evidence consists of reports made after the hearing: an April 2017 MRI of plaintiff's spine showing facet arthritis in her spine, (Dkt. 21, Pg ID 612); a September 2016 letter from Dr. Pieh stating the results of an x-ray showing spondylotic changes (Dkt. 19, Pg ID 578); an April 2016 Michigan Department of Human Services Medical Needs form filled out by Dr. Pieh (*Id.* at Pg ID 580); an undated Medical Needs form (*Id.* at Pg ID 579); an undated Progress Note (*Id.* at Pg ID 585); and a September 2016 Progress Note (*Id.* at Pg ID 587).  Her submittal also appears to contain information from

her health insurer.  (*Id.* at Pg ID 583-84).  While these latter records are new in that they were apparently generated after the hearing, they fall outside of the applicable review period and plaintiff has not made any effort to illuminate how or why review of these records would likely bring about a different result.

Of equal importance is good cause for failing to produce the evidence earlier.  "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (citing *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (1984) (*per curiam*)).  The fact that evidence was not in existence at the time of the hearing <u>does not</u> on its own establish "good cause."  Rather, the Sixth Circuit takes "a harder line on the good cause test" as regards timing and requires that the claimant "give a valid reason for his failure to obtain evidence prior to the hearing." *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

As previously noted, at plaintiff's administrative hearing plaintiff's attorney stated that the record <u>contained all the available evidence and was complete</u>.  (Tr. 28).  Plaintiff has not shown good cause for the failure to present any new evidence before the hearing in front of the ALJ.  In fact, plaintiff provides no explanation at all, although as noted, some of the evidence appears to be medical records from after the date of the ALJ decision.  In plaintiff's supplemental documentation, she

merely states that she provided the medical evidence in the hope that it will help this Court come to a decision.  (Dkt. 19, Pg ID 576).  Unfortunately, that is not the standard for a Sentence Six remand.  *See Honeycutt v. Astrue*, 2008 WL 2074015, at *5 (E.D. Ky. May 14, 2008 (denying Sentence Six remand where plaintiff submitted additional evidence to the Appeals Council but did not argue that the new evidence requires a remand under Sentence Six.).  Therefore, the undersigned does not recommend a Sentence Six remand of this case.

### 3.    Procedural Due Process

Plaintiff raises the following claims under the umbrella of procedural due process: that the Commissioner committed abuse of process in the following ways: (1) having as its motive to block her from receiving the benefits she believes she is entitled to; (2) failing to provide her with notice that there would be an expert witness at the hearing before the ALJ; (3) failing to provide her with notice that she had the right to submit additional evidence - to examine evidence used in making the determination, to introduce witnesses, to question witnesses, and to present written or oral arguments to ALJ; and (4) receiving testimony from her while her medication side effects prevented her from answering questions properly at the hearing.  (*Id.* at pp. 2-3).  Each of these claims lacks merit.

Social Security claimants have, for purposes of procedural due process, a property interest in benefits to which he or she hopes to qualify.  *Flatford v.*

*Chater*, 93 F.3d 1296, 1304 (6th Cir. 1996); *Richardson v. Perales*, 402 U.S. 389,

401-02 (1971).  "At a minimum, the Due Process Clause requires that an individual

is afforded notice and an opportunity to be heard before the deprivation of a

protected interest through adjudication."  *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d

611, 620 (6th Cir. 2010).  "Due process requires that a social security hearing be

'full and fair."  *Flatford*, 93 F.3d at 1305 (citing *Perales*, 402 U.S. at 401-02).  To

determine whether such a hearing passes constitutional muster, a court must look

to the three factors identified by the Supreme Court in *Mathews v. Eldridge,* 424

U.S. 319, 335 (1976):

> First, the private interest that will be affected by the
> official action; second, the risk of an erroneous
> deprivation of such interest through the procedures used,
> and the probable value, if any, of additional or substitute
> procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal
> and administrative burdens that the additional or
> substitute procedural requirement would entail.

Plaintiff was provided notice of the hearing and who would testify at the

hearing.  The hearing notice expressly states, "A vocational expert will testify at

your hearing."  (Tr. 99).  The hearing notice also explained plaintiff's rights.  She

was informed that the Commissioner would subpoena witnesses plaintiff believed

had relevant information.  (Tr. 99).  She was informed that she "may submit

documents, present and question witnesses, state your case, and give written

statements about the facts and law."  (Tr. 99).  Therefore, she was notified of her

rights before the hearing.  Further, she was notified of the right to submit

additional evidence after the hearing.  The Notice of Decision informed plaintiff:

"You or your representative may send us a written statement about your case.  You

may also send us new evidence.  You should send your written statement and any

new evidence **with your appeal.**  Sending your written statement and any new

evidence with your appeal may help us review your case sooner."  (Tr. 8)

(emphasis in original).  Plaintiff acknowledged receipt of the hearing notice on

April 13, 2015 (Tr. 116) and in May 2015 (Tr. 143).  These notices put plaintiff on

notice of her rights; plaintiff cannot tenably argue otherwise.

Whether a hearing was "full and fair" requires the undersigned to examine

the *Eldridge* factors.  The undersigned recognizes that, under the first *Eldridge*

factor, the private interest at stake here is potentially great.  Indeed, "a claimant's

'private interest' is her 'interest in a fair determination of [her] qualification (or

lack thereof) for social security disability benefits and a meaningful opportunity to

present her case.'"  *Adams v. Massanari*, 55 Fed. Appx. 279, 286 (6th Cir. 2003).

As to the second *Eldridge* factor, under the procedures followed there was a

low risk of an erroneous deprivation.  Plaintiff was given an opportunity to heard,

with counsel, after receiving multiple notices of the hearing and of her rights,

question witnesses, and state her case.  *See* Hearings, Appeals, and Litigation Law

Manual ("HALLEX") I-2-6-60 (plaintiff and any witnesses may testify at the

hearing before the ALJ subject to the ALJ's determination of subject and scope, and plaintiff and appointed representative, if any, has right to question any witnesses); *see also* (Tr. 27-73, hearing transcript).  The Commissioner's procedures provide plaintiff and similarly-situated individuals a fair opportunity to present arguments for determination of disability.  Where a claimant has been given the opportunity to appear at the hearing and did appear, was represented by counsel, and was permitted to present evidence and legal arguments, the claimant's right to due process has not been violated.  *Corbett v. Comm'r of Soc. Sec.*, 2012 WL 2462298, at *4 (D.N.J. June 27, 2012), *aff'd*, 523 Fed. Appx. 892 (3d Cir. 2013).  In *Corbett*, the plaintiff claimed violation of procedural due process because she was not allowed to testify before the ALJ and was not given an opportunity to explain her exhibits.  *Id.*  However, because the plaintiff appeared with counsel and presented her case there was no procedural due process violation. *Id.*  Likewise, here, plaintiff was given the opportunity to appear at the hearing and did appear, was represented by counsel, and was permitted to present evidence and legal arguments.  Given the sufficient notice explained above and plaintiff's opportunity to present arguments at the hearing with counsel, there is a low risk of erroneous deprivation.  *See Ferriell*, 614 F.3d at 621 (because the procedures at issue provided "Ferriell and similarly-situated individuals a fair opportunity to

present arguments like Ferriell's claim for an amended onset date of disability, these procedures present a low risk of an erroneous deprivation of benefits.").

As for the third factor, the undersigned does not see any merit in requiring further procedures than those highlighted above.  Plaintiff does not suggest any additional procedures she believes would have helped her case.  Because there is a low risk of erroneous determination under the procedures used, the undersigned believes the utility of additional safeguards would be outweighed by the fiscal and administrative burden imposed.  *See Bailey v. Colvin*, 2015 WL 428103, at *5 (E.D. Ky. Jan. 31, 2015).  Thus, all three *Eldridge* factors lead the undersigned to conclude that plaintiff's hearing was full and fair.

The undersigned notes that plaintiff adverted to a state law abuse of process claim.  That claim is not within the purview of this Court.  "[T]he authority of this Court to review administrative decisions of the Commissioner is limited to deciding whether the proper legal standards were used and 'whether there is substantial evidence in the record to support the findings.'"  *Portwood v. Comm'r of Soc. Sec.*, 396 F. Supp. 2d 799, 804 (E.D. Mich. 2005) (citing *Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003)).

4.    Medication Side Effects

Plaintiff also claims that she was unable to answer questions properly at the hearing because she was under the influence of her prescription medication.  (Dkt.

15 at pp. 2-3).  To the extent this is a claim that her due process rights were violated because she was unable to testify without suffering medication side effects, the argument fails.  The seminal case on medication side effects affecting due process rights (and only case on the subject) is *Riggins v. Nevada,* 504 U.S. 127 (1992).  In Justice Kennedy's concurring opinion, he explained that the side effects of antipsychotic drugs can compromise a criminal defendant's right to a fair trial because those types of drugs can affect the defendant's demeanor in the courtroom and render the defendant incapable or unwilling to assist counsel.  *Id.* at 142.  The record does not reflect that any issues identified in *Riggins* are present in this case.  There is no indication that her medication affected her concentration or ability to answer questions; there is also no indication that plaintiff was taking antipsychotic drugs.  The record does not indicate that she complained of side effects to a medical care provider.  Further, the hearing transcript reveals that plaintiff was able to answer questions and provide detail, despite her representation to the ALJ that her medication made it difficult to remember dates.  Finally, her attorney did not raise any such issue at the hearing.  (Tr. 39).

     5.    Disability Determination Services

The undersigned is unable to discern what plaintiff's argument is in regard to attending Disability Determination Services.  She claims she "attended Disability Determination Services and was examined by a medical consultant and

examiner who was not part of the initial decision and barred from deciding

plaintiff's reconsideration of claim the claim [sic] which was denied." (Dkt. 15 at

p. 2). There is nothing in the record from Disability Determination Services.

Plaintiff does not provide a date for the examination and does not argue that it is

evidence missing from the record. As noted earlier, her attorney told the ALJ the

record <u>contained all the available evidence and was complete</u>. (Tr. 28). It is also

unclear what or who she is saying was barred from deciding the reconsideration of

her claim. It is not for the Court to examine the record to craft an argument for

plaintiff based on her conclusory statement. *See Marion v. Astrue*, 2010 WL

4955714, at *4 (N.D. Ohio Nov. 30, 2010) ("While Marion's *pro se* allegations are

to be liberally construed, it is not the Court's function to comb through hundreds of

pages of medical records to craft an argument that might resemble one Marion

attempts to raise.") (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.

1997)). Thus, this claim is unavailing.

Finally, the undersigned notes plaintiff's arguments raised for the first time

in her reply brief: that the ALJ violated her First Amendment rights when he

denied her disability benefits because she attends church, and that she was denied

benefits because of her obesity. (Dkt. 23, Pg ID 615-16). Because these

arguments are raised for the first time in her reply brief, the arguments are

waived. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)

("Raising the issue for the first time in a reply brief does not suffice; reply briefs . . . do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.  Further the non-moving party ordinarily has no right to respond to the reply brief. . . .  As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.") (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)); *Newsome v. Comm'r of Soc. Sec.*, 2014 WL 5362456 at *8 (E.D. Mich. Sept. 24, 2014) (citing *Martinez v. Comm'r of Soc. Sec.*, 2011 WL 1233479 at *2 (E.D. Mich. March 30, 2011)).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 12, 2018                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 12, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant: <u>Joan B. Davis, 28501 Franklin Road, Apt. 141, Southfield, MI 48034</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7850
<u>tammy_hallwood@mied.uscourts.gov</u>
